**NOT FOR PUBLICATION**

<pre>
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY


_____
                                       :
ANTHONY RICARDO SMITH,                 :
                                       :   Civil Action No.
                Petitioner,            :   12-0094 (JLL)
                                       :
                v.                     :   O P I N I O N
                                       :
JOHN TSOUKARIS et al.,                 :
                                       :
                Respondents.           :
_____:
</pre>

**Jose L. Linares**, District Judge:

On January 5, 2012, the Clerk docketed a habeas petition executed, pursuant to 28 U.S.C. § 2241, by Anthony Ricardo Smith ("Petitioner"), a citizen of Jamaica. The petition is challenging Petitioner's detention by the Department of Homeland Security ("DHS")[1] at the Hudson County Correctional Facility.

For the reasons set forth below, the Court will dismiss the petition without prejudice and will direct Petitioner to do the following: (a) file an amended pleading in the event Petitioner has developed a factual predicate supporting a viable claim; and (b) submit a valid in forma pauperis application or Petitioner's filing

---

[1] Petitioner's submission makes frequent references to "ICE." See Docket Entry No. 1. The Court clarifies that "ICE" means U.S. Immigration and Customs Enforcement, which is "the principal investigative arm of the [DHS]." http://www.ice.gov/about/overview/ (last visited Feb. 21, 2012).

fee of $5.00.

## I.   PETITIONER'S PRIOR ACTIONS

Petitioner previously filed another § 2241 petition with this Court, see Smith v. Office Director, Hudson County Jail, Civil Action No. 11-4207 (JLL) (N.J.D.), where Petitioner analogously challenged his detention in ICE custody. See id. Docket Entry No. 1. In that petition, Petitioner asserted that the immigration judge ("IJ") ordered Petitioner removed to Jamaica on March 23, 2011. See id. at 4. Petitioner also stated that he appealed his order of removal to the Board of Immigration Appeals ("BIA") and that, as of July 12, 2011, his appeal was still pending before the BIA.[2] See id. at 4 and 12.

Since, in light of Petitioner's then-pending appeal to the BIA, Petitioner's order of removal was not final, this Court initially stayed Petitioner's Civil Action No. 11-4207 in anticipation of resolution of Diop v. ICE by the United States Court of Appeals for the Third Circuit ("Court of Appeals"). After the Court of Appeals ruled in Diop v. ICE, this Court informed Petitioner that, in the event that Petitioner's order of removal remained not final, Petitioner could replead his Diop claims, if

---

[2] Therefore, even if this Court were to hypothesize that the BIA dismissed Petitioner's appeal the next day after Petitioner's execution of his petition in Smith v. Office Director, Hudson County Jail, Civil Action No. 11-4207 (JLL) (N.J.D.), it is self-evident that such dismissal still could not have occurred prior to July 13, 2011.

any.  See <u>Smith v. Office Director, Hudson County Jail</u>, Civil Action No. 11-4207 (JLL) (N.J.D.), Docket Entry No. 3.

In response, Petitioner filed an amended petition, dated October 19, 2011, suggesting that his order of removal became final, presumably upon the BIA's affirmance of the decision issued by Petitioner's IJ.[3]  See <u>id.</u>, Docket Entry No. 5, at 20-23.  Thus, this Court determined that Petitioner had no viable habeas claim under <u>Diop v. ICE/Homeland Sec.</u>, 656 F.3d 221 (3d Cir. 2011), but Petitioner might eventually develop a viable claim under <u>Zadvydas v. Davis</u>, 533 U.S. 678 (2001).  See <u>Smith v. Office Director, Hudson County Jail</u>, Civil Action No. 11-4207 (JLL) (N.J.D.), Docket Entries Nos. 4 and 5.  Taking notice of the qualitative difference between Petitioner's initial, <u>Diop</u>-based claim and his new, <u>Zadvydas</u>-based challenge, the Court directed the Clerk to open a new and separate habeas matter for Petitioner, <u>Smith v. Holder</u>, Civil Action No. 11-6987 (JLL) (N.J.D.), where this Court addressed Petitioner's <u>Zadvydas</u>-based assertions.[4]  See <u>Smith v. Holder</u>, Civil Action No. 11-6987 (JLL) (N.J.D.), Docket Entries Nos. 2 and

---

[3] Read in conjunction with Petitioner's original pleading, Petitioner's amended petition indicated that such affirmance took place sometime between July 13 and October 19, 2011.

[4] Since the <u>Smith v. Holder</u> action was created by this Court <u>sua sponte</u> in order to address the shift in Petitioner's legal claim caused by a change in Petitioner's factual circumstances, no filing fee was assessed in connection with that action and no <u>in forma pauperis</u> application was ordered by the Court.

3.

In its decision issued in Smith v. Holder, this Court detailed the governing legal standard and pointed out Petitioner's erroneous conclusion that his removal order became final on the day when his IJ ordered him removed. See id., Docket Entry No. 2, at 3-5. In no ambiguous terms, the Court explained to Petitioner that his Zadvydas-based claim could become viable only after six months from the date of the BIA's affirmance of the IJ's decision.[5] See id. at 6. The Court, therefore, dismissed Petitioner's Zadvydas-based claim without prejudice, as facially unripe, allowing Petitioner an opportunity to file another § 2241 petition when Petitioner's Zadvydas-based challenges ripened. See id. at 8; see also id., Docket Entry No. 3.

## II.  PETITIONER'S INSTANT ACTION

Petitioner filed the petition at bar ("Petition") on January 5, 2012. See Docket Entry No. 1. The Petition arrived unaccompanied by Petitioner's in forma pauperis application or his filing fee. See id.

The Petition is a rather lengthy submission, which primarily offers this Court Petitioner's perceptions of what the legal regime is, or should be, while failing to assert proper factual

---

[5] The Court explained to Petitioner that in the event the BIA reversed the IJ's decision, Petitioner would have no Zadvydas-based claims, but his Diop-based claim would become potentially viable agaion. See Smith v. Holder, Civil Action No. 11-6987 (JLL) (N.J.D.), Docket Entry No. 2, at 7.

allegations.[6] The only facts this Court could gather from carefully examining the Petition at hand (as well as Petitioner's prior § 2241 pleadings), are as follows: (a) the entire span of Petitioner's detention in custody of the ICE, that is, before, during and after his immigration proceedings, has lasted over six months; (b) Petitioner is a native and citizen of Jamaica; (c) Petitioner was a holder of permanent legal residency card in the United States; (d) Petitioner had a criminal conviction in the United States; (e) Petitioner's IJ ordered him removed on March 23, 2011; and (f) Petitioner's appeal to the BIA was dismissed on some unspecified date (seemingly, sometime between July 13 and October 19, 2011). In contrast, Petitioner's discussion of what the law is (or should be) is rather extensive. See, generally, Docket Entry No. 1. Moreover, Petitioner cites a number of decisions rendered by the United States Supreme Court, the Court of Appeals and other circuit and district courts with regard to both pre-removal-period detention and post-removal-period detention. See, generally, id.

## III. DISCUSSION

### A. The Governing Legal Regime

---

[6] "Habeas corpus petitions must meet heightened pleading requirements." McFarland v. Scott, 512 U.S. 849, 856 (1994). A petition must "specify all the grounds for relief" and set forth "*facts* supporting each of the grounds thus specified." 28 U.S.C. § 2254 Rule 2(c) (amended Dec. 1, 2004, applicable to § 2241 petitions through Habeas Rule 1(b)) (emphasis supplied).

There is a distinction between the legal analyses applicable to habeas challenges raised by "pre-removal-period" aliens and habeas challenges raised by "removal-period" aliens. Understanding the distinction requires clarification the term "removal period," since this term is a legal term of art ensuing from the relevant statutory language. Section 1231(a)(1)(A) provides that the government has a 90-day "removal period" to remove an alien ordered removed from the United States. Detention during that "removal" period is mandatory[7] and, in addition, § 1231(a) provides that this "removal period" shall be extended and the alien may remain in detention during such extended period, if the alien "acts to prevent the alien's removal [ensuing from his/her] order of removal." 8 U.S.C. § 1231(a)(1)(C).

This "removal period" starts on the latest of the following: (a) the date when the order of removal becomes administratively final (that is, appeal to the Board of Immigration Appeals ("BIA") was either taken and ruled upon, or the time to appeal expired); or (b) if the removal order is judicially reviewed and, in addition, if a circuit court orders a stay of the removal, then it is the date of the court's final order as to that removal; or (c) if the

---

[7] Section 1231(a)(2) mandates detention during the removal period. See 8 U.S.C. § 1231(a)(2) ("During the removal period, the Attorney General shall detain the alien. Under no circumstance during the removal period shall the Attorney General release an alien who has been found inadmissible under section 212(a)(2) or 212(a)(3)(B)").

alien is detained or confined (except under an immigration process), then it is the date when the alien is released from confinement. See 8 U.S.C. § 1231(a)(1)(B).

Moreover, even after the 90-day "removal period," the government may further detain the alien, under 8 U.S.C. § 1231(a)(6), for a "certain" period of time. Recognizing that some detainees might end up being detained "indefinitely" because countries might never agree or be able to accept their citizens awaiting to be removed, the Supreme Court held that aliens may be detained under § 1231(a)(6) only for "a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas v. Davis, 533 U.S. at 689. Being mindful that its holding could lead to difficult judgment calls in the courts, the Supreme Court, "for the sake of uniform administration in the federal courts," recognized a six-month "presumptively reasonable period of detention." Id. at 700-01 (emphasis supplied). Yet, after establishing this presumptively reasonable period of detention, the Supreme Court stressed, in unambiguous terms, that even

> [a]fter this 6-month period, o[nly if] the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no

Page -7-

significant likelihood of removal in the reasonably foreseeable future.

Id. at 701 (emphasis supplied).[8]

### B. The Petition States an Unripe Claim

In the event Petitioner is an alien held in ICE custody during his "removal period," Petitioner might have a viable claim if, and only if: (a) he asserts facts showing that his order of removal became final (i.e., that the BIA affirmed his order of removal or his time to appeal to the BIA expired) more than six months ago; (b) he asserts facts showing no significant likelihood of

---

[8] In addition, since no language in Zadvydas excluded or limited the operation of the tolling-like function enunciated in 8 U.S.C. § 1231(a)(1)(C), an alien who, during his presumptive Zadvydas-based period, takes actions delaying his removal (e.g., by refusing to cooperate with the ICE in his/her removal to his/her country of origin), cannot demand his/her release upon expiration of these six months. See, e.g., Wang v. Carbone, No. 05-2386, 2005 U.S. Dist. LEXIS 24499 (D.N.J. Oct. 17, 2005) (calculating the presumptive period excluding the period of non-cooperation and relying on Riley v. Greene, 149 F. Supp. 2d 1256, 1262 (D. Colo. 2001), and Sango-Dema v. District Director, 122 F. Supp. 2d 213, 221 (D. Mass. 2000)). Rather, the period affected by the alien's obstructive actions is excluded from the presumptive period articulated in Zadvydas, thus causing a quasi-tolling mimicking, in its operation, the tolling articulated in § 1231(a)(1)(c). Indeed, it would be anomalous to suggest that an alien's frustration of the government's efforts to remove him/her would reward the alien with release from custody if the alien is persistent enough to keep his/her thwarting activities for a period exceeding Zadvydas-based six months. "Zadvydas does not save an alien who fails to provide requested documentation to effectuate his removal. The reason is self-evident: the detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock." Pelich v. INS, 329 F.3d 1057, 1060 (9th Cir. 2003).

Petitioner's removal to Jamaica in the reasonably foreseeable future, regardless of Petitioner's record of his good-faith cooperation with the ICE in the ICE's efforts to have him removed; and (c) requests outright release from confinement. Notably, the period Petitioner spent in ICE custody prior to having his order of removal finalized (by means of the BIA's affirmance of the decision issued by Petitioner's IJ) is of no relevance to this above-detailed "removal period"-based analysis.

In contrast, an alien held in ICE custody during time that cannot qualify as the alien's "removal period" has no basis to raise <u>Zadvydas</u> challenges (and, correspondingly, no basis to seek outright release). Rather, that alien could raise habeas claims seeking a qualitatively different habeas relief, such as a remedy in the form of a bond hearing, which could be ordered in the event the alien has been held for a prolonged period of time under § 1226(c) (that is, the statute, which does not expressly provide for a bond hearing).[9] Thus, a § 1226(c) alien detainee who is in

---

[9] Although the Supreme Court, in <u>Demore v. Kim</u>, held that Section 1226(c) "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process," <u>see</u> 538 U.S. at 523, the Court of Appeals held that

> § 1226(c)[] . . . implicitly authorizes detention for [only] a reasonable amount of time, after which the authorities must make an individualized inquiry into whether detention is still necessary to fulfill the statute's purposes of ensuring that an alien attends removal proceedings and that his release will not pose a danger to the community.

<u>Diop</u>, 656 F.3d at 231.

custody during such stage of his/her immigration proceedings that cannot qualify as that alien's "removal period" might be entitled to habeas relief (in the form of an order directing a bond hearing) under Diop.

Here, the Petition states that "Petitioner . . . filed an appeal of his removal order but that was subsequently denied[,] and he never filed a petition for review with the [C]ourt of [A]ppeals." Docket Entry No. 1, at 4. Therefore, it appears that Petitioner is still attempting to state a Zadvydas-based claim, much like he did in Smith v. Holder, Civil Action No. 11-6987 (JLL) (N.J.D.).

However, as in Smith v. Holder, Petitioner's Zadvydas-based challenge is unripe. The instant Petition was executed on December 27, 2011. See Instant Matter, Docket Entry No. 1, at 24. Yet, the dismissal of Petitioner's appeal to the BIA, which took place on a date the Petition failed to specify, occurred sometime between July 13 and October 19, 2011, and in no event prior to July 13, 2011. Thus, Petitioner's Zadvydas-based challenge could not have become ripe until January 13, 2012, six months after the dismissal, which was 17 days after the filing of the Petition at bar. Consequently, when submitted, the Petition was unripe by, at the very least, seventeen days and, perhaps, by many months. Correspondingly, the Petition is subject to dismissal without prejudice, like

Petitioner's prior Section 2241 application addressed by this Court in Smith v. Holder, Civil Action No. 11-6987 (JLL) (N.J.D.).

However, the Court cannot rule out the possibility that Petitioner's Zadvydas-based challenge could now be ripe. Therefore, the Court will dismiss the Petition without prejudice and will direct Petitioner to file an amended pleading detailing the date of the BIA's affirmance of Petitioner's order of removal and the facts showing that, regardless of Petitioner's cooperation with the government in the ICE's efforts to remove him to Jamaica, there is no significant likelihood of Petitioner's removal to Jamaica in the reasonably foreseeable future.[10]

## IV. CONCLUSION

For the foregoing reasons, the Petition will be dismissed, as unripe. Such dismissal will be without prejudice to Petitioner stating his Zadvydas-based challenges, if any such challenges have ripened, in his amended petition. In light of Petitioner's failure to submit a valid in forma pauperis ("IFP") application,[11] the Court

---

[10] The Petition at bar is laden with Petitioner's conclusions that there is no significant likelihood of his removal to Jamaica in the reasonably foreseeable future. See, generally, Instant Matter, Docket Entry No. 1. However, the ICE website indicates that Petitioner is no longer in ICE custody, see <<https://locator.ice.gov/odls/searchByAlienNumber.do>>, which strongly suggests that the ICE indeed succeeded at removing Petitioner to Jamaica. However, being mindful of the possibility that an online record might be incorrect, this Court finds it prudent to dismiss the Petition without prejudice.

[11] In a habeas matter, the prisoner seeking to proceed IFP must submit to the Clerk: (a) a completed affidavit of poverty;

will direct Petitioner to duly apply for IFP status or to submit his filing fee of $5.00.

An appropriate Order accompanies this Opinion.

_____
Jose L. Linares,
United States District Judge

Dated: February 21, 2012

---

and (b) a certification signed by an authorized officer of the institution certifying both the amount presently on deposit in the petitioner's prison account as well as the greatest amount on deposit in the petitioner's prison account during the six month period prior to the date of the certification. See Local Civil Rule 81.2(b). The prisoner's legal obligation to prepay the filing fee or to duly obtain IFP status is automatically incurred by the very act of initiation of his/her legal action. See Hairston v. Gronolsky, 2009 U.S. App. LEXIS 22770, at *5 (3d Cir. Oct. 15, 2009) (citing Hall v. Stone, 170 F.3d 706, 707 (7th Cir. 1999)). Here, Petitioner submitted a motion, See Docket Entry No. 1-1, the language of which could, loosely, qualify as an affidavit of poverty. However, Petitioner submitted no certification of his prison account. Granted that Petitioner is being ordered to submit his amended pleading, it appears that Petitioner's rights could not be prejudiced by an undue delay if Petitioner is ordered to submit such a proper certification together with his amended petition.